*14
 
 Per Curiam.
 

 Defendants, who include supervisors and the appointed corporation counsel for the city of Detroit’s legal department, appeal by leave granted the trial court’s order granting plaintiffs’ motion to certify a class composed of all African-American individuals who either held or sought employment with the city of Detroit’s law department from 1994 to 1999, for positions that required a law school education, including law clerks, legal interns, and lawyers. We reverse and remand for further proceedings.
 

 At issue in this case is whether the trial court erred in certifying a class action for legal personnel in the city of Detroit’s law department. In an order entered on March 15, 2000, the trial court ultimately ruled that, on the basis of allegations of racial discrimination, a class could be certified
 

 composed of and limited to all African-Americans who sought employment with, or were employed by, the City of Detroit Law Department from January 1, 1994 through December 1, 1999 in job classifications that had the prerequisite of a law school education, which included: law clerks, legal interns and lawyers.
 

 In general, plaintiffs alleged that racial discrimination began after Dennis Archer was elected mayor of the city of Detroit and appointed defendant Phyllis James to the position of corporation counsel to oversee the law department. Defendant James reorganized that department and created several new upper management and supervisory positions. Plaintiffs allege that the new supervisory staff established by defendant James created a hostile and discriminatory work environment for African-Americans. We conclude that the trial court erred in certifying this matter as a class action.
 

 
 *15
 
 This Court reviews a trial court’s decision on class certification under the clearly erroneous standard.
 
 Zine v Chrysler Corp,
 
 236 Mich App 261, 270; 600 NW2d 384 (1999). A finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made.
 
 Id.
 

 Defendants principally challenge the trial court’s findings with regard to class certification under MCR 3.501(A)(1). Pursuant to that rule, one or more members of a specific class may bring suit on behalf of other members of the class only if the following elements are shown to exist:
 

 (a) the class is so numerous that joinder of all members is impracticable;
 

 (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
 

 (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
 

 (d) the representative parties will fairly and adequately assert and protect the interests of the class; and
 

 (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.
 

 Because there is limited case law in Michigan addressing class certifications, this Court may refer to federal cases construing the federal rules on class certification.
 
 Brenner v Marathon Oil Co,
 
 222 Mich App 128, 133; 565 NW2d 1 (1997). When evaluating a motion for class certification, the trial court is required to accept the allegations made in support of the request for certification as true. The merits of the case are not examined.
 
 Allen v Chicago,
 
 828 F
 
 *16
 
 Supp 543, 550 (ND Ill, 1993). The burden is on the plaintiff to show that the requirements for class certification exist.
 
 Id.
 

 Defendants do not challenge the first requirement under MCR 3.501(A)(1)(a), that “the class is so numerous that joinder of all members is impracticable.” In their motion for certification, plaintiffs alleged that they were able to identify over 350 African-American employees who were adversely affected by the reorganization of the department. Close to another one hundred African-Americans had applied for jobs during that same period, and this latter category could further expand in the future. In its findings, the trial court found that numerosity of the class was established because there were over forty members who fell within the class parameters. It is apparent that any class created in this case would appear to be large and, therefore, properly the subject of a class action rather than many individual actions.
 
 Zine, supra
 
 at 287-288.
 

 Defendants challenge the court’s finding that subsection A(l)(b) was satisfied. That subsection requires a determination whether common questions of fact or law among the class members predominate over questions affecting only individual members. In
 
 Zine, supra
 
 at 289, the panel explained factor A(l)(b) as follows:
 

 The common question factor is concerned with whether there “is a common issue the resolution of which will advance the litigation.”
 
 Sprague v General Motors Corp,
 
 133 F3d 388, 397 (CA 6, 1998), cert den 524 US 923; 118 S Ct 2312; 141 L Ed 2d 170 (1998). It requires that “the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate
 
 *17
 
 over those issues that are subject only to individualized proof.”
 
 Kerr v West Palm Beach,
 
 875 F2d 1546, 1557-1558 (CA 11, 1989).
 

 In
 
 Zine, supra
 
 at 265, 267, 289-290, this Court refused to find that this factor was satisfied in a proposed class action arising from Chrysler Corporation’s omissions and representations made in booklets distributed to purchasers of new cars. This Court concluded that the individualized proofs in the case would predominate over the general questions presented because the court would have to determine for each class member whether the vehicle was purchased primarily for personal, family, or household use, whether the vehicle was defective and the defect reported, whether the vehicle had been in for a reasonable number of repairs, and whether the class member was unaware of the lemon law after reading Chrysler’s booklet, causing the class member not to pursue remedies under the lemon law.
 
 Id.
 
 at 289-290. The Court held that these factual inquiries were too individualized, would predominate over the common questions, and would render the matter unmanageable as a class action.
 
 Id.
 
 at 290. Accordingly, certification of the class was denied.
 

 We believe that the facts and proofs in this case are even more highly individualized than those in
 
 Zine, supra.
 
 First, the only common issue or question that plaintiffs have identified to support this class action involves defendant James’ reorganization of the entire law department and how that policy allegedly led to discrimination against African-Americans on staff. However, federal case law supports defendants’ position that the general reorganization of an entire
 
 *18
 
 department is not enough to show that there are common questions of law or fact.
 

 In
 
 Allen, supra
 
 at 552, the federal district court held that certification of a class action was not available where the plaintiffs alleged that a reorganization of the city’s work force involved the laying off and hiring of employees on the basis of race. The plaintiffs had attempted to categorize the city’s conduct as standardized, and thereby involving a common issue of fact, but the court held that the mere fact that the challenged employment decisions were made during a work force reorganization was not enough to satisfy the commonality requirement.
 
 Id.
 
 The court found that the claims made by the representative plaintiffs in their complaint did not involve general policies or practices that were discriminatory. Instead, “resolution of the merits of the instant dispute will require independent consideration of each plaintiff’s qualifications for his or her position, their previous work performance and duties, as well as the qualifications and work history of the white employees allegedly granted preferential treatment.”
 
 Id.
 
 To show commonality in that type of situation, the plaintiffs were required to show that there was some standardized employment practice or policy, such as a biased testing procedure.
 
 Id.
 
 at 551-552.
 

 One of the opinions relied on by the court in
 
 Allen, supra
 
 at 552, was
 
 Patterson v General Motors Corp,
 
 631 F2d 476, 481 (CA 7, 1980). Of particular import in that case is the following analysis:
 

 By the same token, we hold that plaintiff has failed adequately to demonstrate that there are questions of law or fact common to the class. See Fed R Civ P 23(a)(2). Although a class action will not be defeated solely because
 
 *19
 
 of some factual variations among class members’ grievances, plaintiff in this case has simply asserted
 
 no
 
 facts relating to other members of the purported class. Moreover, “even if the plaintiff were to specify grievances of other members of the purported class, the acts for which plaintiff complains are not susceptible to class treatment.” A certifiable class claim must arise out of the same legal or remedial theory, and grievances of other employees similar to those asserted by plaintiff would not meet that requirement. The issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee. “In other words, the plaintiff’s claims do not relate to general policies or practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment.” [Citations omitted; emphasis added.]
 

 In
 
 Jackson v Motel 6 Multipurpose, Inc,
 
 130 F3d 999 (CA 11, 1997), the Eleventh Circuit Court of Appeals vacated certification of a class action for racial discrimination by a hotel chain brought by its employees and customers. There were allegations that the hotel chain refused to rent vacant rooms to black patrons, segregated black patrons from white patrons within a single facility, and provided substandard services to black patrons as compared to white patrons.
 
 Id.
 
 at 1001. In a separate case, employees of the motel chain claimed that they were required to discriminate against black patrons, that the motel chain retaliated against employees who refused to do so, and that discrimination at the motel chain created a hostile work environment.
 
 Id.
 
 at 1002.
 

 
 *20
 
 The court held that class certification of the customers’ case was not appropriate because case-specific inquiries were required to delve into the facts of each incident of discrimination. Such individual questions were much more predominant than whether the motel chain had a policy or practice of racial discrimination.
 
 Id.
 
 at 1006. Similarly, the case brought by the employees of the motel chain also involved very diverse individual claims and the only common issue among the employees was whether the motel chain had a practice or policy involving racial discrimination in providing accommodations.
 
 Id.
 
 at 1008.
 

 In reviewing the claims of each of the class representatives in the present case, it is apparent that the only common question presented is whether the individuals involved were discriminated against because of their race. How these individuals may have been discriminated against does not involve common issues of fact or law, but highly individualized questions. The individual factual circumstances pertinent to each plaintiff will need to be reviewed, and individual, fact-specific inquires will need to be made in evaluating why certain individuals were not hired or promoted, or why other individuals were discharged or not retained. Plaintiffs have simply not shown that there was any specific policy or practice followed by defendants to satisfy the “commonality” requirement under MCR 3.501. See also
 
 Lee v Grand Rapids Bd of Ed,
 
 184 Mich App 502, 505-506; 459 NW2d 1 (1989) (the plaintiffs failed to show commonality under MCR 3.501 [A] [1] [b] when there were multiple bargaining agreements that applied to the situation, and there were many questions related to the individual circum
 
 *21
 
 stances on why disability benefits for pregnant employees may have been denied). For these same reasons, plaintiffs’ statistical evidence is insufficient to show commonality.
 
 Michigan State Univ Faculty Ass’n v Michigan State Univ,
 
 93 FRD 54, 60 (WD Mich, 1981). Because plaintiffs did not satisfy MCR 3.501(A)(1)(b), the court erred in certifying this matter as a class action.
 

 Defendants also challenge the trial court’s finding with regard to subsection A(l)(c), that “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” This factor is similar to the commonality requirement.
 

 In
 
 Allen, supra
 
 at 553, the court explained the “typicality” factor under federal law as follows:
 

 The typicality requirement of Rule 23(a)(3) directs the court “to focus on whether the named representatives’ claims have the same essential characteristics as the claims of the class at large.” While factual differences between the claims do not alone preclude certification, the representative’s claim must arise from “the same event or practice or course of conduct that gives rise to the claims of the other class members and . . . [be] based on the same legal theory.” In other words, the claims, even if based on the same legal theory, must all contain a common “core of allegation.” [Citations omitted.]
 

 Much like the commonality requirement, plaintiffs’ claims in the present case do not have a “common core of allegation” to establish the typicality factor. Plaintiffs have not set forth any single policy or practice of discrimination, but only a set of individual claims of discrimination. This case is similar to
 
 Allen, supra
 
 at 553, wherein the plaintiffs’ allegations involved a range of employment actions, such as fail
 
 *22
 
 ure to promote, job loss, and not posting openings. In addition, all the individual factors for why certain promotions were not offered, or why some persons were fired, involve highly individualized matters personal to each plaintiff.
 
 Id.
 
 As in the present case, there are simply too many different factual circumstances involved in these claims to show that the claims presented by the class representatives are typical of the claims of the remaining members of the class.
 

 Defendants next argue that the trial court clearly erred in its finding under subsection A(l)(d). That subsection requires that “the representative parties will fairly and adequately assert and protect the interests of the class.” The above factor focuses on whether the class representatives can fairly and adequately represent the interests of the class as a whole. Under
 
 Allen, supra
 
 at 553, this involves a two-step inquiry. “First, the court must be satisfied that the named plaintiffs’ counsel is qualified to sufficiently pursue the putative class action. Second, the members of the advanced class may not have antagonistic or conflicting interests.” (Citations omitted.) Defendants argue that plaintiffs’ counsel cannot represent the interests of the entire class. They cite two possible situations where two of the attorneys may be required to testify as witnesses. While it appears that the attorneys’ roles as witnesses would be minor, if at all necessary, plaintiffs have at least three other attorneys who could step in and take over the litigation if one or two of the other attorneys must be disqualified. This alone would not be a reason to deny class certification at this time.
 

 
 *23
 
 Second, there is a possibility that conflict among the plaintiffs could occur. Because there are claims that some members were denied promotions, there may be conflicts among the class members related to competitions for the same positions. In addition, because of the highly individualized nature of the claims presented, it is unlikely that the named plaintiffs can adequately represent all the interests of the entire class.
 
 Id.
 
 at 553-554. Plaintiffs have not shown that this factor was satisfied.
 

 Finally, defendants challenge the trial court’s findings with regard to subsection A(l)(e), which concerns whether “maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.” Considering the factors set forth in MCR 3.501(A)(2) and the highly individualized nature of the claims alleged in this case, it is apparent that the issues involved are so disparate as to make the case unmanageable as a class action.
 
 Lee, supra
 
 at 504-505. In sum, the trial court clearly erred in certifying this matter as a class action.
 

 Because we believe that the trial court erred in certifying this matter as a class action under MCR 3.501, we need not reach the issue whether the court erred in allowing plaintiffs to proceed on a disparate impact theory or by appointing a discovery facilitator. However, we would likely find error on both grounds. Because the trial court did not find that any of the representative plaintiffs could identify a policy that supported a disparate impact theory, the court should not have allowed this case to proceed as a class action on that theory. The representative members of the class were required to establish a viable cause of
 
 *24
 
 action before they could represent the class.
 
 Zine, supra
 
 at 287. It was also error for the court to appoint a retired judge to act as a discovery facilitator when it is apparent that the court intended to assign some of its judicial functions to the facilitator. See
 
 Oakland Co Prosecutor v Beckwith,
 
 242 Mich App 579; 619 NW2d 172 (2000);
 
 Carson Fischer Potts & Hyman v Hyman,
 
 220 Mich App 116, 121; 559 NW2d 54 (1996).
 

 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.